**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| KAILEN COWSETTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:20-cv-01101-AGF |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Kailen Cowsette was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.   For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts, which is contained in Plaintiff's brief (ECF No. 25-1), as supplemented by Defendant.   (ECF No. 30-1).   Together, these statements provide a fair

---

[1]     Kilolo Kijakazi is now the Acting Commissioner of Social Security.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in this suit.

description of the record before the Court.   Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on September 13, 1999, applied as a child for SSI under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(C)(i), and received those benefits.   Plaintiff turned 18 on September 13, 2017.   The SSA reviewed his eligibility and determined on December 13, 2017 that he did not qualify for SSI under the adult definition of disability.   On January 9, 2018, Plaintiff filed a request for reconsideration, which was denied.   He thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on May 7, 2019.   Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing.   By decision dated October 3, 2019, the ALJ found that Plaintiff had the following severe impairments: Ehlers-Danlos syndrome, neurofibromatosis, attention-deficit hyperactivity disorder (ADHD), combined type, and autism spectrum disorder.   However, the ALJ found that none of Plaintiff's impairments or combinations of impairments met or medically equal the severity one of the deemed-disabling impairments listed in the Commissioner's regulations.

In explaining why Plaintiff's mental impairments were not severe under the regulations, the ALJ noted that he considered the four areas of mental functioning set out in the Commissioner's regulations for evaluating mental disorders, also known as the "paragraph B" criteria.   The ALJ relied upon Plaintiff's function reports, the medical evidence in the record, Plaintiff's post high-school educational records, and testimony

from Plaintiff's grandmother and teacher.   The ALJ determined Plaintiff has "moderate" limitations in all four areas of functioning: understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; interacting with others; and adapting or managing oneself.

In making his determination, the ALJ considered the testimony of State-agency physician Keith Allen, Ph.D.   Dr. Allen opined that Plaintiff had a "mild" limitation in adapting and managing himself and "moderate" limitations in the remaining three areas of functioning.   The ALJ found the moderate findings persuasive, but rejected the mild finding as inconsistent with the balance of the record.   The ALJ considered the testimony of consultative examiner F. Timothy Leonberger, PhD., who opined that Plaintiff has mild-to-moderate limitations in all areas of functioning.   The ALJ found this opinion persuasive because it is consistent with the medical evidence.

The ALJ next considered the opinion of consultative examiner Stone Kraushaar, Psy.D., who opined that Plaintiff had no impairment in concentrating, persisting, and maintaining pace, a mild impairment in adapting and managing himself, and moderate impairments in the other areas of functioning.   The ALJ found this opinion unpersuasive because it is inconsistent with the balance of the medical evidence.   Next, the ALJ considered the opinion of State-agency physician James Morgan, Ph.D.   Dr. Morgan opined that Plaintiff has a mild limitation in adapting and managing himself and moderate limitations in the remaining areas of functioning. The ALJ concluded the opinion was not persuasive because it did not adequately capture Plaintiff's limitations in

3

adapting and managing himself.

The ALJ also considered the testimony of Plaintiff's teacher, Kelly Taylor, that Plaintiff has mostly slight limitations and difficulty forming relationships.   The ALJ found Ms. Taylor's opinion was persuasive, as it is consistent with the evidence. Additionally, the ALJ considered the opinion of Plaintiff's grandmother, Deborah Bonner, who opined that Plaintiff experiences various limitations.   The ALJ found her opinion not entirely persuasive because it is subjective.

In understanding, remembering, and applying information, the ALJ noted that Plaintiff needs reminders to brush his hair, and has trouble test taking, including failing some tests.   However, Plaintiff was described by his doctor as "bright" and good with computers, and he received several A grades on exams.   As such, the ALJ found a "moderate" limitation.   In interacting with others, the ALJ noted Plaintiff's grandmother testified that he gets along well with authority and regularly plays basketball with friends. Plaintiff is described as oppositional to taking medication, but he conversed easily with at least one consultative examiner.   As such, the ALJ found Plaintiff has a "moderate" limitation.

With regard to concentrating, persisting, and maintaining pace, the ALJ noted Plaintiff testified that he is often disinterested in things and Plaintiff's grandmother stated that he has difficulty completing tasks and paying attention for more than two minutes. However, she also noted that he completes household chores such as cutting the grass and raking leaves and plays video games.   During several examinations, Plaintiff was

4

described as having adequate focus and concentration.   As such, the ALJ found a "moderate" limitation.   Finally, with regard to adapting and managing oneself, the ALJ noted Plaintiff's grandmother stated that Plaintiff needs help in completing personal care, but is able to prepare sandwiches.   Plaintiff's medical record describes him as "high functioning" and he appeared well-groomed at consultative exams.   As such the ALJ concluded Plaintiff has a "moderate" limitation.

Because the ALJ found that Plaintiff's medically determinable mental impairment caused no more than "moderate" limitations in any of the functional areas, the ALJ concluded that Plaintiff's mental impairment did not meet or medically equal any of the listed impairments, and that Plaintiff's mental impairment was non-severe.   The ALJ noted that the limitations at this step of the analysis (determining the severity of impairments) were "not a residual functional capacity [RFC] assessment," but that the RFC assessment described later in her opinion "reflect[ed] the degree of limitation the [ALJ] ha[d] found in the 'paragraph B' mental function analysis."   Tr. 18.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of "light" work, as defined by the Commissioner's regulations, except he can:

> occasionally climb ladders, ropes, and scaffolds, but frequently climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; and, frequently reach, handle and finger bilaterally.   Work is limited to simple, routine, repetitive tasks in a low-stress job defined as occasional decision-making, occasional changes in the work setting, and no fast-paced production work, so no assembly line type jobs.   Work is further limited to occasional interaction with the public, coworkers, and supervisors.

5

Finally, the claimant can be off-task 1 minute every 30 minutes to stand up,
stretch, move about and change positions but must otherwise remain on
task.

Tr. 18.

The ALJ next found that Plaintiff could perform certain light and unskilled jobs

listed in the Dictionary of Occupational Titles ("DOT") (cafeteria attendant, folder, and

racker), which the VE testified that a hypothetical person with Plaintiff's RFC and

vocational factors (age, education, work experience) could perform and that were

available in significant numbers in the national economy.   Accordingly, the ALJ found

that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter filed a timely request for review by the Appeals Council.   The

Appeals Council denied review on June 22, 2020.   Plaintiff has thus exhausted all

administrative remedies, and the ALJ's decision stands as the final agency action now

under review.   In his brief before this Court, Plaintiff argues that: (1) the ALJ did not

pose the chosen RFC to the VE; (2) the ALJ failed to properly evaluate lay witness

testimony; and (3) the ALJ did not properly evaluate medical opinion testimony.

## DISCUSSION

## Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review

the entire administrative record to determine whether the ALJ's findings are supported by

substantial evidence on the record as a whole.   *Johnson v. Astrue*, 628 F.3d 991, 992 (8th

Cir. 2011).   The court "may not reverse merely because substantial evidence would

support a contrary outcome.   Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion."   *Id*. (citations omitted).   A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.   If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner."   *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."   *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).   A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.   *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.   42 U.S.C. § 423(d)(1)(A).   The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.   The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.   If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.   A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).   As noted above, a special

7

technique is used to determine the severity of mental disorders.   This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.   20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.   If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.   If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.   *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).   When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden.   *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**The Vocational Expert's Testimony**

Plaintiff first argues that the hypothetical posed to the VE failed to account for all of the limitations contained in the RFC and therefore her testimony does not constitute substantial evidence.   "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies."   *Cox v. Astrue*, 495 F.3d 614, 620–21 (8th Cir. 2007) (citing *Porch v. Chater,* 115 F.3d 567, 572 (8th Cir.1997)).

Plaintiff claims the hypothetical posed to the VE was inadequate because it failed to include the limitation contained in the RFC that "claimant can be off-task 1 minute every 30 minutes to stand up, stretch, move about and change positions but must otherwise remain on task."   Tr. 18.   Plaintiff claims this limitation effectively requires employers to have a chair at the workstation, which was not encompassed by the hypothetical.

Contrary to Plaintiff's contention, the limitation does not require Plaintiff to have access to a chair for the entire workday.   The RFC limited Plaintiff to light work. Social Security Regulation 83-10 states that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.   Sitting may occur intermittently during the remaining time."   1983 WL 31251.   Nowhere in the RFC does it state that Plaintiff must have access to a chair during the entire workday.   Instead, during the portion of the workday in which Plaintiff is seated, the RFC states that he must be able to take a break to stand up and stretch for 1

9

minute out of every 30.   And if standing, Plaintiff can presumably be off task to stretch, move about or change positions.

The ALJ correctly noted that the hypothetical encompassed this restriction.[2] Although a sit-stand option was not posited directly to the VE, the hypothetical posited that the claimant be able to perform "light work," and therefore requires standing or walking for approximately 6 hours and sitting for approximately 2 hours in a workday. Tr. 64.   It further included a restriction that Plaintiff would be off task 10% of the day— or 3 minutes out of every 30.   The Court concludes that the hypothetical captured the concrete consequences of Plaintiff's deficiencies as described in the RFC in that it allows Plaintiff to take breaks to stand up and stretch during the portion of the day in which he is seated.

**Lay Witness Testimony**

Plaintiff next contends the ALJ failed to properly evaluate the testimony of Plaintiff's Grandmother, Deborah Bonner, or NPower, an organization that provided job training and an internship to Plaintiff.   In *Smith v. Heckler*, the Eighth Circuit stated, "[w]e have frequently criticized the failure of the Secretary to consider subjective testimony of the family and others.   We have held that a failure to make credibility

---

[2]      The ALJ notes: "[a]lthough a sit-stand option was not directly posed to the vocational expert at the hearing, she did opine regarding off-task behavior, indicating that no more than 10% off-task behavior would be tolerated.   The addition of the above sit-stand option, for 1 out of every 30 minutes (approximately 3.33% of the workday) thus falls below this 10% threshold and would therefore be permissible in accordance with the vocational expert's testimony."   Tr. 22.

determinations concerning such evidence requires a reversal and remand."   735 F.2d

312, 317 (8th Cir. 1984) (quoting *Basinger v. Heckler,* 725 F.2d 1166, 1169–70 (8th Cir.

1984)).   However, more recently the Eighth Circuit has found that a failure to make a

specific credibility finding "constitute[s] a deficiency in opinion writing that does not

require reversal" where "the ultimate finding is supported by substantial evidence on the

record."   *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).   Furthermore, if the same

evidence used to discredit a claimant "also supports discounting the testimony of [a lay

witness], the ALJ's failure to give specific reasons for disregarding [a lay witness's]

testimony is inconsequential."   *Id.*

Plaintiff first argues that the ALJ failed to make a credibility determination as to Ms.

Bonner's testimony.   The ALJ extensively referenced Ms. Bonner's testimony

throughout his opinion and considered it as a factor in evaluating Plaintiff's subjective

testimony about his symptoms.   Tr. 16, 17, 18, 20.   However, the ALJ ultimately found

Ms. Bonner's testimony as to the extent of Plaintiff's limitations was not persuasive:

> The claimant's grandmother, Deborah Bonner, submitted a third party
> function report, in which she indicated, in part, that the claimant had some
> problems buttoning his shirt and tying his shoes.   However, she also
> relayed he completed many activities of daily living as set forth above.   As
> Ms. Bonner's observations of the claimant's limitations are subjective in
> nature only, they are not persuasive.

Tr. 20.

First, the Court notes the ALJ also considered and rejected evaluations of

Plaintiff's limitations because they did not sufficiently capture the severity of Plaintiff's

impairments.   Tr. 17.   For example, the ALJ found the findings of Dr. Allen that Plaintiff had mild limitations in adapting and managing himself was not consistent with the balance of the record, which supported a finding of moderate limitations.   *Id*.

Moreover, much of the evidence used to discredit Plaintiff also supports discounting Ms. Bonner's testimony.   Plaintiff's doctor described him as "high functioning" and "bright."   Tr. 16, 477.   A consultative psychologist testified that Plaintiff could benefit from a structured routine, including employment.   Tr. 680. Plaintiff completed Harris-Stowe State University's 16-week technical program, and received varied grades, including several As.   Tr. 407-08.   He also completed a 25 hour-per-week internship through NPower as part of the program.   Tr. 403.   The ALJ found Plaintiff's statements concerning the intensity of his symptoms were not consistent with the medical record, his description of his daily activities, or Plaintiff's exhibited behavior. Tr. 19.   This same evidence also supports discounting Ms. Bonner's testimony.   As such, any deficiency in the ALJ's determination that Ms. Bonner's testimony was not credible is inconsequential.

Plaintiff next claims the ALJ failed to consider the testimony of NPower. NPower is an organization that "provides supportive coaching services that offer community referrals to address cognitive and or behavioral symptoms if they are deemed to impact one's ability to obtain employment."   Tr. 403.   Plaintiff graduated from the NPower Missouri Tech Fundamentals workforce development program.   Adande Lane, NPower's Program Director, provided testimony that Plaintiff

> often became withdrawn in large group settings or with work that
> challenged his abilities.   At times, he simply presented disinterested or
> restless.   We are uncertain to what degree daily affect contributed to
> academic performance however with added assistance and clear LD
> diagnosis Kailen will be capable of completing the certification and
> entering the IT workforce.

Tr. 401.   The ALJ does not mention Ms. Lane specifically in his opinion.

"Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."   *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).   "Moreover, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."   *Id.*   The ALJ did consider Plaintiff's internship at the program, noting Plaintiff worked 25 hours a week answering phone calls and providing customer service support.   Tr. 19.   As discussed above, the ALJ's determination about the severity of Plaintiff's mental impairments was supported by the record, including Plaintiff's stated daily activities and evaluations by medical providers describing him as bright and able to benefit from employment.   Furthermore, the limitations in the RFC to "occasional interaction with the public, coworkers, and supervisors," and a "low-stress job defined as occasional decision-making, occasional changes in the work setting, and no fast-paced production work," Tr. 18, address the same limitations described in Ms. Lane's testimony.   The ALJ did not err by declining to cite the testimony.

**Testimony of Dr. Anderson**

Finally, Plaintiff claims the ALJ failed to properly evaluate the testimony of

Plaintiff's treating physician, orthopedic surgeon David Anderson, M.D.   In evaluating

Dr. Anderson's opinion, the ALJ found:

> Treating provider David Anderson, M.D. completed a treating source
> statement finding the claimant could walk 1-2 blocks, sit 30 minutes at one
> time and 4 hours in a workday, stand 15 minutes at once and stand/walk 4
> hours in a workday.   He also indicated the claimant would need to shift
> positions at will, required a break every 2 hours for 15 minutes, and would
> miss work 2-3 times each month.   This opinion is internally inconsistent,
> especially with regard to sitting/standing and walking.

 Tr. 20.   The Commissioner may assign "little weight" to a treating physician's opinion

when it is internally inconsistent.   *Chesser v. Berryhill*, 858 F.3d 1161, 1164-65 (8th Cir.

2017).   *See also Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) (Good reasons

exist for assigning lesser weight to the opinion of a treating source where "the treating

physician's opinions are themselves inconsistent."); *Prosch v. Apfel*, 201 F.3d 1010, 1012

(8th Cir. 2000) (internal inconsistency and conflict with other evidence on the record

constitute good reasons to assign lesser weight to a treating physician's opinion).

Plaintiff claims the evidence is not internally inconsistent, and as such the ALJ

improperly discredited Dr. Anderson's testimony.

In his report, Dr. Anderson notes that claimant can sit for 30 minutes at a time or

stand for 15 minutes at a time, may sit for a maximum of 4 hours during an 8-hour

workday, and may stand for a maximum of 4 hours during an 8-hour workday.   He also

found Plaintiff must be able to get up and walk every 20-30 minutes for a period of 6-10

14

minutes.   However, Dr. Anderson determined Plaintiff can walk only 1-2 city blocks without severe pain.

The ALJ did not err in finding this opinion was internally inconsistent.   Dr. Anderson's opinion that Plaintiff must walk between 6-10 minutes roughly every half hour and that Plaintiff could walk only 1-2 city blocks at a time are incompatible. Several of his other opinions as to Plaintiff's limitations are not logically consistent.   At one point, Dr. Anderson opines that Plaintiff may sit for 30 minutes at a time and at another point, he opines that Plaintiff must be able to stand up every 20-30 minutes.   Dr. Anderson also states Plaintiff cannot spend more than half of the workday sitting and half of the workday standing, but the maximum amount of time Plaintiff may stand is only 15 minutes, while he can sit for roughly 30 minutes.   The ALJ reasonably found this opinion was internally inconsistent, and his RFC is supported by substantial evidence in the record.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.   A separate Judgment shall accompany this Memorandum and Order.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 29th day of December, 2021.

15